**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEFFREY BISHOP, | : |
| Plaintiff, | : |
| v. | : |
| | : |
| CITY OF PHILADELPHIA | :     No:_____ |
| (DEPARTMENT OF PRISONS) | : |
| | : |
| and | : |
| | :     **TRIAL BY JURY DEMANDED** |
| BLANCHE CARNEY, | : |
| Commissioner, Dept. of Prisons; | : |
| | : |
| and | : |
| | : |
| TERRENCE CLARK, | : |
| Deputy Commissioner, Dept. of Prisons; | : |
| | : |
| and | : |
| | : |
| XAVIER BEAUFORT, | : |
| Deputy Commissioner, Dept. of Prisons; | : |
| | : |
| Defendants. | : |
| | : |

## <u>COMPLAINT</u>

Plaintiff, Jeffrey Bishop, by and through his undersigned attorneys, files the within Complaint

WITH DEMAND FOR TRIAL BY JURY and avers as follows:

1.      Plaintiff Jeffrey Bishop is a Correctional Sergeant for Defendant, City of Philadelphia,

in its Department of Prisons.  He has suffered retaliation and reprisals for asserting his civil rights in

this Court.  *See Bishop v. Phila.*, E.D. PA No: 2:20-cv-03977-TJS (Savage, J.) (herein "*Bishop I*").

2.      Plaintiff settled *Bishop I*.  However, the Release in *Bishop I,* signed by the parties on

April 21, 2022, provides as follows:

> Nothing in this Release bars **JEFFREY BISHOP** from pursuing
> any future claim of discrimination or retaliation, even if the claim
> began to arise before the date of this Release.

3.      The language of the Release clearly and unequivocally allows the instant claim to go forward, based on the four corners of the document.  By way of background, it was the intention of the parties was to allow Plaintiff to pursue a claim arising out of the discipline alleged in the instant Complaint; Plaintiff believed that he would suffer retaliation based on allegations made against him before the suit was filed.  Plaintiff's beliefs were accurate; the actionable adverse actions occurred on October 13, 2022 and thereafter.  *See infra.*

4.      Plaintiff has suffered a continuing pattern of harassment, hostility, retaliation and reprisals, as set forth in the Complaint (*Bishop I* Dkt.#1); Amended Complaint (*Bishop I* Dkt.#12); and Supplemental Complaint (*Bishop I* Dkt.#63).  These pleadings are incorporated herein by reference and are referred to herein as the "*Bishop I* Pleadings")

5.      Plaintiff has also suffered additional acts of retaliation and reprisals, for the filing of *Bishop I*; and for the underlying issues that led to the Complaint in *Bishop I*; and for being the spouse of the plaintiff in *Scott v. City of Philadelphia (Philadelphia Prisons System)*), E.D. PA No: 2:17-cv-02068-MSG (the "*Scott* Matter").

6.      This Court need not relitigate the issues in *Bishop I* or the *Scott* Matter because those claims were brought in good faith (as is evidenced by the fact that Defendant settled *Bishop I* and the *Scott* matters for substantial sums). Defendants' retaliatory acts against Plaintiff for his good faith assertion of his civil rights is a violation of his First Amendment right to petition the Government for a redress of grievances, enforceable pursuant to 42 U.S.C. §1983 ("§ 1983"); and the statutory protections against retaliation in Title VII.  Retaliating against Plaintiff for his spouse's good faith assertion of her civil rights is a further violation of the First Amendment and Title VII.

7.      On December 15, 2022, Plaintiff filed a Charge of Discrimination with the EEOC. On May 11, 2023, the EEOC issued, on Plaintiff's request, a Dismissal and Notice of Rights.

8.      This suit is timely filed within the statute of limitations for Title VII and § 1983.

9-220.   Repeats and realleges paragraphs 1-121 of the Amended Complaint, {*Bishop I*, DKT# 12, 10/09/2020}; and paragraphs 122-220 of the Supplemental Complaint {*Bishop I*, DKT# 63, 10/26/2021}; and *Exhibits A-H* as if set forth at length herein.[1]

## IV.   ADDITIONAL PARTIES

221.   Commissioner Blanche Carney has personally participated in the misconduct directed against Plaintiff.  She is named in this Complaint in her official capacity.

222.   Deputy Commissioner Terence Clark has personally participated in the misconduct directed against Plaintiff.  He is named in this Complaint in his official capacity.

223.   Deputy Commissioner Xavier Beaufort has personally participated in the misconduct directed against Plaintiff.  He is named in this Complaint in his official capacity.

## V.   ADDITIONAL FACTS

224.   In an article in the *Inquirer* on November 4, 2021, the newspaper had obtained footage of a September 30, 2021 beating and stabbing in CFCF.  The footage was shown in the online article. https://www.inquirer.com/news/philadelphia-jails-staffing-shortage-assault-20211104.html.

225.   Plaintiff, who works at RCF, was in no way involved in the incidents described in that article; the video; or in releasing the video to the press.

### A.   Plaintiff Was Written Up Without Evidence His Login Accessed the Videos.

226.   According to Defendant (but unknown to Plaintiff), videos were allegedly accessed on October 18, 19, 23, 24, 25, 27 and 28, 2021.  *Exhibit I*, 2/15/2022 Employee Violation Reports (the "2/15/2022 EVRs"). (Two EVRs were provided on the same day for the same charges.)

---

[1] The reassertion of these paragraphs is not intended to revive any of the causes of action set forth therein; the causes of action asserted in this case are asserted in the instant pleading.  The claims of Morgan Bishop, a/k/a Morgan Scott, have been dismissed; Ms. Scott is not a party to the instant suit.

The purpose of restating these pleadings is to plead a pattern of hostility, retaliation and reprisals that have continued throughout *Bishop I* and continue unabated despite the settlement of *Bishop I*, as expressly contemplated in the Release.

227.     The 2/15/2022 EVRs were prepared by Devin Jackson, Manager of Operations/OIT. This is the "Office of Innovation Technology" which is responsible for Prisons' computer systems.

228.     It is believed, and therefore averred, that Defendant Beaufort ordered that Plaintiff be written up for this alleged violation; Jackson reports to Beaufort.  This continued a pattern and practice of Beaufort's retaliations and reprisals against Plaintiff, as asserted in *Bishop I*.

229.     Defendant asserts that Plaintiff falsely stated he did not access the videos.  However, Defendant cites no evidence whatsoever that suggests Plaintiff did see the videos.  *See Exhibit I*.

230.     It is believed, and therefore averred, that the allegations of Defendants are false – there is no evidence that Plaintiff's login was used to access the videos.

231.     Defendant first ordered Plaintiff to appear for a preliminary disciplinary hearing on March 16, 2022. *Exhibit J*, Notice of Preliminary Hearing (at Warden level).  However, Jackson was not available and that hearing was continued to April 18, 2022.

232.     At the April 18, 2022 preliminary hearing, Jackson again was not available.  However, Deputy Warden Pierre LaCombe, who reports to Defendant Clark, referred the matter to the board. This was improper as there was no evidence presented suggesting that Plaintiff accessed the videos. LaCombe falsely asserted he had no choice but to refer the matter.  This is contrary to Defendant's rules and regulations – charges brought without evidence must be dismissed at the preliminary hearing stage.

233.     The formal board hearing was held on May 12, 2022.  Jackson again failed to appear at that hearing.  Instead, Sgt. Billy Adams, also from OIT, read the EVR prepared by Jackson.  No supporting documents for the EVR was provided to Plaintiff, at that hearing or any other time.

234.     Plaintiff's union representative, Eric Hill, questioned Adams about the content of the report; Adams could not answer because he had no personal knowledge.  This is contrary to the rules and regulations of Prisons; Plaintiff must be provided an opportunity to question the charging officer.

4

235.    After Adams read Jackson's alleged report, Defendant Beaufort took over the proceedings.  This was improper and contrary to the rules and regulations of Prisons.  Beaufort was the highest-ranking officer and the chair of the proceedings.  He was to listen, not prosecute.

236.    Defendant Beaufort put a document on a computer screen purportedly showing that Plaintiff's computer accessed the video.  That document was never provided to Plaintiff; it did not show what Beaufort claimed it showed.  If it did, Adams would have been able to authenticate its contents.

237.    Furthermore, Beaufort was deposed in *Bishop I*.  He was well aware of the accusations against him in that matter.  He knew he was accused of retaliation against Plaintiff.  Instead of recusing himself, he took the lead in pressing the charges against Plaintiff.

**B.    In the Alternative, There Is No Evidence Plaintiff Accessed the Videos.**

238.    In the alternative, if there is evidence that the videos were accessed through Plaintiff's account (which is denied), Plaintiff has no knowledge of, or responsibility for, such access.

239.    At times material, the computer login for anyone ranked Sergeant or above can access any video for any facility.

240.    However, Sergeants and other supervising personnel must log into their computer systems when they begin their shifts.  The computer system has no way (known to Sgt. Bishop, at least) to "lock" the screen.

241.     The only way Sgt. Bishop could prevent others from using his computer with his login would be to log off the computer completely. The time needed to logon and logoff takes about 15 minutes total. (approx. 10 minutes to wait for the system to log him in and approx. 5 minutes for the system to log him out).  Therefore, it is impractical for Sgt. Bishop to logout every time he leaves the computer.

242.    Plaintiff regularly logs in at the start of his day, but his job duties require that he spend the supermajority of his work on the prison floor, away from his computer.

243.    Defendant has no policy or procedure by which Sergeants and higher-ranking officers can assure their logins are not used by unauthorized users.

**C.      The Video Allegations Were a Pretext (or Mixed Motive) to Deny Plaintiff Promotion to Correctional Lieutenant.**

244.    At May 12, 2022 hearing, Beaufort recommended Plaintiff be suspended for 15 days. However, no formal announcement of the result was presented to Plaintiff for months.

245.    Plaintiff took the civil service examination for the rank of Correctional Lieutenant. Plaintiff.  He was interviewed on September 21, 2022; the Captains who interviewed Plaintiff, Capt. Hinton; Capt. Toomer; and Capt. Booker said Plaintiff did a very good job and was better than other candidates.

246.    On or about September 27, 2022 Lieutenant Shalise Forman stated that she heard Plaintiff did well on his interview, but she received an email from HR stating that Plaintiff needed to serve his suspension as soon as possible.  This was the first time Plaintiff learned he would be suspended.

247.    On or about October 7, 2022, Plaintiff received Notice of Suspension for 15 days. *Exhibit K.*  This Notice falsely stated that Plaintiff was served with this notice on May 12, 2022.

248.    On October 14, 2022, Plaintiff received a certified letter from Prisons containing the Notice of Suspension.  *Exhibit L,* certified letter tracking notice.

249.    *Exhibit K* falsely states it was served on May 12, 2023.  This is false. Plaintiff first received an email of *Exhibit K* on or about October 7, 2022 and the certified mail was received October 14, 2022.  *Exhibit L.*

250.    The statement in the Notice of Suspension that Plaintiff falsely stated "he was unaware of any policy regarding using the computer" is false.  Plaintiff stated he is unaware of any policy requiring that he log out of his computer when he leaves his desk.  *See supra.*

251.    The Notice of Suspension does not state that Plaintiff accessed the videos or that Plaintiff lied about accessing the videos.  Plaintiff did neither.

252.    On October 28, 2022, the day Plaintiff came off of suspension, Defendant announced promotions to Correctional Lieutenant.  Plaintiff was passed over for promotion because of his suspension.  The suspension was issued in retaliation for his assertion of his First Amendment and other civil rights.

253.    Several officers have been charged in connection with computer access to the video, but only Plaintiff was suspended.  However, every other officer who was charged in connection with this received no discipline, a written warning, or an unserved suspension.  Only Plaintiff was charged with lying and charges for lying were only sustained against Plaintiff.

254.    Plaintiff was singled out for additional discipline in retaliation for asserting his First Amendment and other civil rights.  The timing of the suspension was to assure Plaintiff would not be promoted to Correctional Lieutenant.

255.    Defendants chose not to suspend Plaintiff at the time of the hearing until they were ready to promote Sergeants to Lieutenants.  By punishing Plaintiff contemporaneously to the promotions, they precluded Plaintiff from appealing the suspension.

256.    Plaintiff was more qualified for the promotion than some, if not all, of the Correctional Lieutenants promoted in October 2022.

257.    At least one of the promoted Correctional Lieutenants, Timothy Radtke, was disciplined less than two years before his promotion.

258.    Defendant's motivation for singling out Plaintiff for a hearing and for threatening him with greater sanctions than similar employees is retaliation.

**D.      Plaintiff Was Removed from the Promotions List In May 2023**

259.    On or about November 3, 2022, Plaintiff again took the civil service exam for correctional lieutenant.  He passed, ranking #14 on the list.

260.    On or about March 28, 2023 and April 5, 2023, Plaintiff received emails inviting him to interview for the promotion to Correctional Lieutenant.  Plaintiff promptly responded and expressed his interest in the promotion.

261.    Brett Johnson, HR Manager, informed Plaintiff he was not eligible for promotion due to the October 2022 suspension described *supra*.  Johnson told Plaintiff he would be provided materials needed to appeal that determination. However, Plaintiff never received such notice.

262.    Instead, on May 19, 2023, Johnson informed Plaintiff the ineligibility determination was in error and that he should be considered for promotion.

263.    This was too late.  The promotions to Lieutenant were announced on May 10, 2023.

264.    On May 1, 2023, Plaintiff again applied for promotion to Correctional Lieutenant.  He must again take the civil service exam.

265.    However, even if Plaintiff does receive promotion, he will be lower in seniority than twenty Lieutenants promoted in October 2022 and May 2023.

**E.      Plaintiff Has Suffered Substantial Economic and Other Cognizable Harm.**

266.    The conduct of Defendants has added to the hostile work environment Plaintiff experienced and continues to experience (as pled in *Bishop I*).

267.    Deputy Commissioner Clark and/or Deputy Commissioner Beaufort, have personally participated in several adverse actions against Plaintiff.  Commissioner Carney, who was already

deposed and is a witness *Bishop I*, signed off on the adverse actions and otherwise participated in creating a hostile work environment, as described herein.

268.    As a Correctional Sergeant, Plaintiff's base salary is $77,300 per year.  Correctional Lieutenants' base salary is $87,200 per year. This is before overtime is earned at time and a half; Correctional Sergeants and Correctional Lieutenants both work the same amount of overtime, which is substantial every year.

269.    As a direct and proximate result of Defendant's conduct, Plaintiffs suffered severe injuries, which include but are not limited to:

    a)    Lost wages;
    b)    Lost back pay;
    c)    Lost future wages;
    d)    Lost benefits;
    e)    Embarrassment and humiliation;
    f)    severe emotional distress; and
    g)    other damages as described in further detail in this pleading and as will become evident through the course of discovery.

## V.    CAUSES OF ACTION

## COUNT I:    RETALIATION – TITLE VII

270.    Repeats and realleges paragraphs 1-269 as if set forth at length herein.

271.    The acts of Defendant as set forth in the original and supplemental complaints constitute retaliation.

272.    Plaintiff's wife engaged in protected activity in the *Scott* matter.

273.    Plaintiff engaged in protected activity in filing and prosecuting a charge with the EEOC, filing and prosecuting the instant lawsuit, and otherwise insisting on his civil rights.

274.    There is a causal connection between the adverse actions and Plaintiff's protected activities.

275.    The conduct of Defendant might well have persuaded a reasonable worker from making or supporting a charge of discrimination.

276. As a direct and proximate result of Defendant's conduct, Plaintiff suffered injuries, as set forth in the prior pleadings and incorporated herein by reference.

WHEREFORE, Plaintiff demands Judgment against Defendant, City of Philadelphia, for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

**COUNT II:   HOSTILE WORK ENVIRONMENT – TITLE VII**

277. Repeats and realleges paragraphs 1-276 as if set forth at length herein.

278. Defendant, through the conduct of representatives with *respondeat superior* liability, took adverse employment actions against Plaintiff. These individuals also created a hostile and abusive work environment.

279. The conduct of Defendant was severe. In addition, or in the alternative, pervasive.

280. The motivation for the adverse actions and the hostile work environment was the *Scott* lawsuit. In addition, or in the alternative, the motivation for the adverse actions was the filing of the instant lawsuit and seeking enforcement of his right to be free from discrimination, retaliation, and his good faith assertions to protect his First Amendment rights.

281. There is a causal connection between the protected activities and the adverse actions.

282. Plaintiff did not welcome the retaliatory, harassing or abusive conduct.

283. A reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and abusive.

284. The adverse actions of Defendant have created a hostile work environment.

285. A reasonable person in Plaintiff's position would have found the environment to be hostile and abusive.

286. Plaintiff found the work environment to be hostile and abusive.

287.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered injuries, as set forth in the prior pleadings and incorporated herein by reference.

WHEREFORE, Plaintiff demands Judgment against Defendant, City of Philadelphia, for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

## COUNT III:   §1983 RETALIATION – ASSERTION OF FIRST AMENDMENT RIGHTS

288.     Repeats and realleges paragraphs 1-287 as if set forth at length herein.

289.     Plaintiff also engaged in First Amendment protected activity.  He petitioned the government for a redress of grievances.  Such petition was in the form of appealing to the CSC and otherwise filing complaints and grievances about the adverse actions taken against him.

290.     Plaintiff's assertion of his First Amendment rights was in good faith.

291.     Even if his speech was not protected by the First Amendment, there is an actionable retaliation claim in this Court.

292.     Defendant retaliated against Plaintiff for grieving the Facebook discipline, pursuing CSC proceedings and asserting First Amendment violations in this Court.

293.     The actions were committed by persons with formal supervisory authority.

294.     Defendant operated under color of law.

295.     Plaintiff's First Amendment protected conduct was a motivating factor in Defendant's decision to take adverse actions against Plaintiff.  In addition, or in the alternative, such conduct was a determinative factor in Defendant's decision.

296.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered injury.

WHEREFORE, Plaintiff demands Judgment against Defendant, City of Philadelphia, for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

**COUNT IV:  § 1983 RETALIATION – HOSTILE WORK ENVIRONMENT**

297.    Repeats and realleges paragraphs 1-296 as if set forth at length herein.

298.    Plaintiff suffered intentional discrimination for seeking the enforcement of his First Amendment rights.

299.    The actions were committed by persons with formal supervisory authority.

300.    Defendant operated under color of law.

301.    The discrimination was pervasive and regular.

302.    The discrimination detrimentally affected Plaintiff.

303.    The discrimination would detrimentally affect a reasonable person who asserted First Amendment rights in that position.

304.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered injury.

WHEREFORE, Plaintiff demands Judgment against Defendants for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

Respectfully submitted,

CREECH & CREECH LLC

/s/ Timothy P. Creech
TIMOTHY P. CREECH
1835 Market St., Suite 2710
Philadelphia, PA 19103
(215) 575-7618; Fax: (215) 575-7688
timothy@creechandcreech.com

DATED:      June 9, 2023

| EMPLOYEE  VIOLATION  REPORT | Philadelphia Department of Prisons |
|---|---|

*(Prepare  in  Quadruplicate)*

| INSTITUTION OR UNIT<br>RCF | | DATE<br>02/15/2022 |
|---|---|---|
| NAME OF EMPLOYEE<br>JEFFREY BISHOP | EMPLOYEE #<br>255738 | TITLE<br>CORRECTIONAL SERGEANT |
| NAME OF SUPERVISOR<br>DEVIN JACKSON | | TITLE<br>MANAGER OF OPERATIONS| OIT |

**COMPLAINT**

*(State Rule, Order or Regulation violated and give details)*

An inquiry was done about videos that were accessed in the CFCF Investigation share on Mis-Orion. Sgt. Jeffrey Bishop PR# 255738, you were ordered to submit memos as to if you accessed the share containing the incident of 9/30/2021 on D2 Pod 3 and the incident on B2 Corridor incarcerated persons fight-weapon used. In your memos you stated that you did not access these videos, but an audit done by OIT Systems Manager William Burch showed that you accessed these videos several times with successful logins on two different PC's. PC PDP693535 showed that the videos were accessed on Oct. 18,(19),23,24,25,27 and the 28th 2021. PC PDP693726 showed that the videos were accessed on Oct. (19), 23, and 24 2021. Your timecard reflects that you were working on those dates and your account was successfully logged on with your credentials on these computers according to the systems audit. As a Sgt at RCF you should not be accessing or viewing videos of another Institution without consent of the facility to which the share belongs.

Therefore, you are being charged with violating the below General Orders and Code of Conduct Policies:

**General Order # 01:** It is essential that each employee has a working knowledge of and complies with the policies and procedures.
**General Order # 02:** Lack of knowledge of any policy, procedure, rule or law shall not excuse or mitigate the failure to comply with, or the breach or violation of any rule, or several of them by an employee.
**General Order # 35:** Knowingly and willfully making a false report or improperly removing or altering any departmental report, document or record shall constitute grounds for disciplinary action.
**C.O.C #10:** Each employee shall respect the confidentiality and preservation of all PDP record sand documents
**C.O.C #13:** Each employee shall cooperate fully and truthfully in any inquiry or investigation conducted by the PDP and any other law enforcement or regulatory agency.

*(Complainant's Signature)*

RECEIVED

WARDENS OFFICE
RIVERSIDE CORRECTIONAL FACILITY

**STATEMENT  BY EMPLOYEE**

My signature indicates that I received this Employee Violation Report. I do not necessarily agree with the charges.

| 3/3/2022 | |
|---|---|
| *(Date)* | *(Employee's Signature)* |

**ACTION TAKEN**

| | |
|---|---|
| | |
| | |

☐ Case closed at Preliminary Hearing on         ☐ Referred for Formal Disciplinary Action.

| CHAIRMAN'S SIGNATURE | DATE | RECEIVED IN PERSONNEL OFFICE *(Date)* |
|---|---|---|
| | | |

*DISTRIBUTION:*   **ORIGINAL** - EMPLOYEE        **TRIPLICATE** - PERSONNEL OFFICER
                  **DUPLICATE** -                **QUADRUPLICATE** –UNION
                  SUPERVISOR

EXHIBIT
I

| **EMPLOYEE   VIOLATION   REPORT** | | Philadelphia Department of Prisons |
|---|---|---|
| *(Prepare in Quadruplicate)* | | |

| INSTITUTION OR UNIT | DATE |
|---|---|
| RCF | 02/15/2022 |

| NAME OF EMPLOYEE | EMPLOYEE # | TITLE |
|---|---|---|
| JEFFREY BISHOP | 255738 | CORRECTIONAL SERGEANT |

| NAME OF SUPERVISOR | TITLE |
|---|---|
| DEVIN JACKSON | MANAGER OF OPERATIONS  OIT |

### COMPLAINT
*(State Rule, Order or Regulation violated and give details)*

An inquiry was done about videos that were accessed in the CFCF Investigation share on Mis-Orion. Sgt. Jeffrey Bishop PR# 255738, you were ordered to submit memos as to,if you accessed the share containing the incident of 9/30/2021 on D2 Pod 3 and the incident on B2 Corridor incarcerated persons fight-weapon used. In your memos you stated that you did not access these videos, but an audit done by OIT Systems Manager William Burch showed that you accessed these videos several times with successful logins on two different PC's. PC PDP693535 showed that the videos were accessed on Oct. 18,19,23,24,25,27 and the 28th 2021. PC PDP693726 showed that the videos were accessed on Oct. 19, 23, and 24 2021. Your timecard reflects that you were working on those dates and your account was successfully logged on with your credentials on these computers according to the systems audit. As a Sgt at RCF you should not be accessing or viewing videos of another Institution without consent of the facility to which the share belongs.

Therefore, you are being charged with violating the below General Orders and Code of Conduct Policies:

**General Order # 01:** It is essential that each employee has a working knowledge of and complies with the policies and procedures.
**General Order # 05:** All employees shall cooperate in maintaining the security and good order of the institution at all times.
**General Order # 35:** Knowingly and willfully making a false report or improperly removing or altering any departmental report, document or record shall constitute grounds for disciplinary action.
**General Order #44:** An employee's authority over a post ceases when the employee has been properly relieved at the end of his/her shift. An employee shall not remove from his or her post, or carry out of the facility any keys, records equipment, orders or documents of any kind, nor any other article not belonging to him or her, unless permitted by the Warden. An employee shall not knowingly allow any other person to remove or carry out such articles for him or her.
**C.O.C X:** Each employee shall respect the confidentiality and preservation of all PDP records and documents
**C.O.C XIII:** Each employee shall cooperate fully and truthfully in any inquiry or investigation conducted by the PDP and any other law enforcement or regulatory agency.

*(Complainant's Signature)*

### STATEMENT BY EMPLOYEE

| My signature indicates that I received this Employee Violation Report. I do not necessarily agree with the charges. | 3 3 2022 *(Date)* | *(Employee's Signature)* |
|---|---|---|

### ACTION TAKEN

☐ Case closed at Preliminary Hearing on    ☐ Referred for Formal Disciplinary Action.

| CHAIRMAN'S SIGNATURE | DATE | RECEIVED IN PERSONNEL OFFICE *(Date)* |
|---|---|---|
| | | |

*DISTRIBUTION:*   **ORIGINAL** - EMPLOYEE      **TRIPLICATE** - PERSONNEL OFFICER
**DUPLICATE** -                **QUADRUPLICATE** –UNION
SUPERVISOR



# PHILADELPHIA DEPARTMENT OF PRISONS

## *Riverside Correctional Facility*

## *Warden's Office*

**To:**        Supervisors, Complainants and Employees charged
**From:**    Ms. J. McCall on behalf of Deputy Warden Lacombe
**Date:**     March 3, 2022
**Subject:**  <u>**PRELIMINARY EMPLOYEE DISCIPLINARY HEARINGS**</u>

Under the Warden's direction, the following employees are <u>**to report to the RCF Warden's Office**</u> on the dates and times indicated for Preliminary Employee Disciplinary Hearings by the Warden or her designee.

> <u>**Wednesday, March 16, 2022; 3:00p**</u>
> SGT Jeffrey Bishop PR#255738 (3x11)
> Devin Jackson Manager of Operations
> (OIT) (Complainant)

To the <u>Employee charged</u>:

- **Employee must sign for the hearing notice.  By signing this form, you acknowledge receipt of your hearing notice.**
- **<u>YOU ARE RESPONSIBLE FOR ARRANGING ANY UNION REPRESENTATION OR WITNESSES.</u>**
- **IT IS MANDATORY TO APPEAR ON THE ABOVE DATE AND TIME.  IF YOU FAIL TO APPEAR AT THE HEARING, IT WILL BE HELD IN ABSENTIA.**

To the <u>Complainant</u>:

- **Complainant must sign for the hearing notice.  By signing this form, you acknowledge receipt of your hearing notice.**
- **Complainant is required to attend the hearing for the employee charged as listed above.**

**To all <u>Supervisors</u>:**

- **Employees should *NOT* be assigned any post outside of the institution on the date above.**

**Please sign and return to Ms. J. McCall, Warden's Assistant.**  Thank you for your cooperation.

_____

**Employee Signature**                                        **Date**

EXHIBIT
J



# PHILADELPHIA DEPARTMENT OF PRISONS
## *Riverside Correctional Facility*
## *Warden's Office*

| | |
|---|---|
| **To:** | Supervisors, Complainants and Employees charged |
| **From:** | Ms. J. McCall on behalf of Deputy Warden Lacombe |
| **Date:** | April 7, 2022 |
| **Subject:** | **PRELIMINARY EMPLOYEE DISCIPLINARY HEARINGS** |

Under the Warden's direction, the following employees are **to report to the RCF Warden's Office** on the dates and times indicated for Preliminary Employee Disciplinary Hearings by the Warden or her designee.

> **Monday, April 18, 2022; 3:30a**
> SGT Jeffrey Bishop PR#255738 (11x7)
> Devin Jackson – MIS (Complainant)

To the Employee charged:
- **Employee must sign for the hearing notice.  By signing this form, you acknowledge receipt of your hearing notice.**
- **YOU ARE RESPONSIBLE FOR ARRANGING ANY UNION REPRESENTATION OR WITNESSES.**
- **IT IS MANDATORY TO APPEAR ON THE ABOVE DATE AND TIME.  IF YOU FAIL TO APPEAR AT THE HEARING, IT WILL BE HELD IN ABSENTIA.**

To the Complainant:
- **Complainant must sign for the hearing notice.  By signing this form, you acknowledge receipt of your hearing notice.**
- **Complainant is required to attend the hearing for the employee charged as listed above.**

To all Supervisors:
- **Employees should *NOT* be assigned any post outside of the institution on the date above.**

**Please sign and return to Ms. J. McCall, Warden's Assistant.**  Thank you for your cooperation.

---

**Employee Signature**                                             **Date**

| | |
|---|---|
| ☒ **NOTICE OF SUSPENSION** | CITY OF PHILADELPHIA |
| ☐ **NOTICE OF INTENTION TO DEMOTE** | **PERSONNEL DEPARTMENT** |
| ☐ **NOTICE OF DEMOTION** | |

*Prepare all notices in TRIPLICATE. Demotion notices on reverse side.*

**NOTICE SERVED**

**UPON**  *(Employee)*
Bishop, Jeffrey R.; PYR # 255738

**DEPARTMENT**
Philadelphia Department of Prisons

**DIVISION**
RCF

**SECTION**
Security

**TITLE OF POSITION**
Correctional Sergeant

Cert. # 7014 0510 0001 6205 0350
☒ BY M A I L ☐ PERSONALLY

**DATE SERVED**
May 12, 2022

Jeffrey R. Bishop
5006 Larchwood Ave,
Philadelphia, PA  19143

---

☒ **NOTICE OF SUSPENSION WITHOUT PAY**

You are hereby notified you are suspended without pay from the above position for a period of      **Fifteen Day Suspension**

days covering the period from the beginning of business on      October 13, 2022      To

October 28, 2022,      at the close of business, for the following reasons : *(Clearly state specific*

*reasons for this action and summarize the facts in support thereof with sufficient particularity to allow the employee to prepare a*

*defense to the charges.)*

---

### Violation of General Orders 01, 35, & Code of Conduct 1.C.11.1

In summary, on October 18, 19, 23, 24, 25, 27, & 28 2021 a video was accessed by you, and an inquiry was done about videos that were accessed in the CFCF Investigation share on Mis-Orion. Sgt. Jeffrey Bishop PR# 255738, you were ordered to submit memos as to if you accessed the share containing the incident of 9/30/2021 on D2 Pod 3 and the incident on B2 Corridor incarcerated persons fighting with a weapon used. In your memos, you stated that you did not access these videos, but an audit done by OIT Systems Manager William Burch showed that you accessed these videos several times with successful logins on two different city-issued desktop computers. PC PDP693535 showed that the videos were accessed on October 18, 19, 23, 24, 25, 27, and 28, 2021. PC PDP693726 showed that the videos were accessed on October 19, 23, and 24, 2021. Your timecard reflects that you were working on those dates and your account was successfully logged on with your credentials on these computers according to the systems audit. As a Sgt at RCF, you should not be accessing or viewing videos of another institution without the consent of the facility to which the share belongs

Sergeant Bishop stated, "that he did not access any videos" pertaining to the incident in CFCF on neither PC as otherwise stated in the EVR. Sergeant Bishop went on to say that on multiple occasions he has left himself logged into a PDP computer and walked away for an extended period. Sergeant Bishop believed that while he did log into the PCs, he did not access the video and that someone else did when he left the room and left his login open to that PC. Sergeant Bishop stated, "he was unaware of any screen that stated the PDP policy regarding logging in and out of a PDP computer".

During questioning by Deputy Commissioner Beaufort, Sergeant Bishop admitted to knowing of the policy. DC Beaufort showed Sergeant Bishop the conference room computer screen that displays the city's policy regarding computer usage for all users. This is the same policy Sergeant Bishop previously stated "he was

**EXHIBIT**
**K**

unaware of any policy regarding using the computer.

During questioning by Deputy Warden Powers, Sergeant Bishop admitted he was logged into both PCs in question. Sergeant Bishop also admitted the question that he was asked by Major Patterson (regarding logging on to the computers) and later asked by Major LaCombe which was also witnessed by a Captain. Sergeant Bishop admitted to Major Powers of having access to the shared drive that the video footage was held on.

DC Beaufort asked Sergeant Bishop "without permission should any supervisor be accessing videos from another facility if they are not assigned to that facility." Sergeant Bishop answers that he did not know he needed permission and that and doubts any supervisor knows that because they do it all the time, DC Beaufort restates the question and says it is a simple question "yes or no" Sergeant Bishop says "no."

DC Beaufort finishes by asking a question that all PDP employees present for May 12, 2022, hearing had to answer. The question is as follows "Did you submit any videos to any News media outlet" Sergeant Bishop answered "No I did not" to DC Beaufort's question.

**DISCIPLINARY RECORD:**

None

You are further notified and advised that you may appeal to the Civil Service Commission from this suspension only if as a result of this suspension, you will have been suspended without pay for more than ten (10) calendar days during the year ending with The end of this suspension.  If you are entitled to appeal to the Civil Service Commission and desire to do so, you must file your appeal within thirty (30) days from the date this suspension begins.

_D C Clark_ | Commissioner of Prisons
*Appointing Authority or Designated Representative* | *Title*

73-66 (Rev. 8/95)     **ORIGINAL** - EMPLOYEE          **CC:** - DEPARTMENT          **CC** - PERSONNEL DIRECTOR
*(Over)*

# USPS Tracking®

**FAQs >**

**Tracking Number:**

**Remove ✕**

## 70140510000162050350

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 3:49 pm on October 14, 2022 in PHILADELPHIA, PA 19143.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered
**Delivered, Front Desk/Reception/Mail Room**

PHILADELPHIA, PA 19143
October 14, 2022, 3:49 pm

**See All Tracking History**

---

**Text & Email Updates**                                          ⌄

---

**USPS Tracking Plus®**                                           ⌄

---

**Product Information**                                           ⌄

**See Less ⌃**

Track Another Package

Enter tracking or barcode numbers



EXHIBIT
L

# Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**